**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| APRIL CARROLL, as ADMINISTRATOR of ESTATE OF KEVIN CARROLL, and in her own right, | ) ) ) ) | Civil Action No. 22-686 |
| Plaintiff, | ) ) ) | District Judge David S. Cercone Magistrate Judge Maureen P. Kelly |
| v. | ) ) | Re: ECF Nos. 12, 21 and 23 |
| COMPREHENSIVE HEALTHCARE MANAGEMENT SERVICES, LLC d/b/a BRIGHTON REHABILITATION AND WELLNESS CENTER, LLC, SAMUEL HALPER, EPHRAM LAHASKY, HEALTHCARE SERVICES GROUP, INC., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

Plaintiff April Carroll, as administrator of the Estate of Kevin Carroll ("Carroll"), and in her own right ("Plaintiff"), brings this action arising out of Carroll's alleged exposure to and death from COVID-19 while working at the Brighton Rehabilitation and Wellness Center. ECF No. 33. Presently before the Court is Plaintiff's Motion to Remand. ECF No. 12. Also before the Court is a Motion to Dismiss filed by Defendants Comprehensive Healthcare Management Services, LLC ("CHMS"), Samuel Halper ("Halper") and Ephram Lahasky ("Lahasky") (collectively, the "CHMS Defendants"), ECF No. 21, and a Motion to Dismiss filed by Defendants HSCG East LLC and Healthcare Services Group, Inc. (collectively, the "HSCG Defendants"), ECF No. 23.

For the following reasons, it is respectfully recommended that Plaintiff's Motion to Remand be granted. Because the Court lacks jurisdiction over Plaintiff's claims, the Court should not consider Defendants' Motions to Dismiss.

## II. REPORT

### A. FACTUAL AND PROCEDURAL HISTORY

#### 1. Plaintiff's Second Amended Complaint

In the operative Second Amended Complaint, Plaintiff alleges that Carroll worked at the Brighton Rehabilitation and Wellness ("Brighton") nursing home facility in Beaver, Pennsylvania, where he provided housekeeping and laundry services. ECF No. 33 ¶¶ 3, 30. Brighton is a care facility for the elderly and others requiring long-term care. Id. ¶ 46. At all relevant times, it housed approximately 750 long and short-term care residents. Id. ¶ 47.

Defendant CHMS bought the Brighton facility from Beaver County in 2014. Id. ¶ 45. After CHMS purchased the facility, it was repeatedly cited by the Pennsylvania Department of Health for violations. Id. ¶¶ 48, 51, 52. The facility was underfunded and understaffed. Id. ¶ 49. The staff it did have was undertrained. Id.

Defendants Halper and Lahasky were the owners and operating officers of CHMS. Id. ¶ 17. They were responsible for the Brighton facility. Id.

The HCSG Defendants supplied housekeeping and laundry services to senior living facilities on a contract basis. Id. ¶ 26. The CHMS Defendants contracted with one or more of the HCSG Defendants to supply workers for Brighton, including Carroll. Id. ¶¶ 28-29.

When the COVID-19 pandemic occurred, Plaintiff claims that Defendants failed to take any protective measures to ensure that workers and residents were protected from exposure to the virus. Id. ¶ 59. After the first positive COVID-19 case at Brighton in March 2020, unsanitary

conditions, lack of personal protective equipment ("PPE"), and the absence of infection control practices caused the virus to "run rampant" in the facility.  Id. ¶¶ 61-62.

In or about March and April 2020, there was a COVID-19 outbreak at the Brighton facility. Id.  At its peak, the Brighton outbreak accounted for 65% of all COVID-19 cases and 90% of all COVID-19 deaths in Beaver County, Pennsylvania.  Id. ¶ 6.  It was one of the most lethal COVID-19 nursing home outbreaks in the United States.  Id. ¶ 7.

By the middle of April 2020, the facility stopped tracking positive COVID-19 cases and operated under the assumption that everyone at the facility was infected.  Id. ¶ 74.  Housing and laundry staff, including Carroll, did not receive PPE despite being required to work in facility wings and hospital rooms with individuals infected by COVID-19.  Id. ¶¶ 69-71.  On May 2, 2020, the Commonwealth of Pennsylvania cited Brighton for immediate jeopardy violations and placed a temporary manager in charge to oversee the facility.  Id. ¶ 75.

United States Representative Conor Lamb called for a federal investigation into Brighton over concerns of "lax oversight" at the facility.  Id. ¶ 76.  The Pennsylvania National Guard was deployed to Brighton on May 8, 2020, and Pennsylvania officials designated an independent full-time manager for the site to handle the COVID-19 outbreak.  Id. ¶¶ 77-79.

Carroll contracted COVID-19 during the Brighton outbreak in April 2020.  Id. ¶¶ 83, 87. After Carroll first exhibited COVID-19 symptoms, he was permitted to return to work after two days without being tested for the virus.  Id. ¶¶ 83-86.  Upon his return to work on April 17, 2020, he became dizzy during his shift and ultimately tested positive for COVID-19.  Id. ¶ 87.  Carroll later died from the virus on June 24, 2020, at the age of 54.  Id. ¶¶ 2, 88-91.  He was one of at least 108 staff members at Brighton to contract the virus and one of 80 residents or staff to die from it. Id. ¶ 81.

Against this backdrop, Plaintiff has sued Defendants under Pennsylvania law for Negligence (Count I), together with claims under the Survival Act (Count III)[1] and for Wrongful Death (Count II), alleging that Defendants:

a. Ignor[ed] the risk of COVID-19 infection to workers at Brighton;

b. Allowed sick and exposed staff and workers to work at the facility;

c. Fail[ed] to provide workers with any equipment to help prevent the spread of COVID-19 at Brighton;

d. Ignor[ed] the fact that staff, workers and residents at the Brighton were infected with and/or were displaying symptoms consistent with COVID-19;

e. Fail[ed] to provide appropriate PPE at Brighton prior to April 2, 2020 and thereafter;

f. Fail[ed] to provide workers with any equipment to help prevent the spread of COVID-19 at Brighton;

g. Fail[ed] to close Brighton, despite the fact that Defendants knew, or should have known, that workers and residents at the facility were suffering from COVID-19;

h. Fail[ed] to close the Brighton, despite the fact that Defendants knew, or should have known, that staff, workers and residents at the facility were suffering from symptoms consistent with COVID-19;

i. Fail[ed] to report the Brighton outbreak before April 1, 2020, when the facility already had several deaths and numerous positive cases;

j. Fail[ed] to initiate timely and adequate quarantine of COVID-19 infected staff, workers and residents to protect uninfected staff, workers and other residents;

k. Fail[ed] to call for assistance from Commonwealth, Federal and/or other specialized agencies despite being aware of the magnitude of the Brighton outbreak;

l. Fail[ed] to follow guidance from WHO [the World Health Organization], CDC [the Centers for Disease Control] and OSHA [the Occupational Safety and Health Administration] to require the use of masks and other PPE;

---

[1] Plaintiff's Survival Act claim is erroneously labeled as "Count II" in Plaintiff's Second Amended Complaint.  ECF No. 33 at 27.

m. Continu[ed] to schedule and require the attendance of workers that Defendants knew or should have known were positive for, likely infected by or would likely test positive for COVID-19;

n. Continu[ed] to schedule and require the attendance of workers that Defendants knew or should have known were at high risk for severe COVID-19 infection/death;

o. Fail[ed] to follow federal guidance from the CDC and OSHA by not mandating and/or enforcing social distancing guidelines at Brighton;

p. Fail[ed] to follow federal guidance from the CDC and OSHA by not mandating that workers who were feeling ill report their symptoms;

q. Fail[ed] to follow federal guidance from the CDC and OSHA by not mandating that workers who were feeling ill stay home from work and self-quarantine;

r. Fail[ed] to require workers to maintain physical/social distance at a minimum 6 feet apart;

s. Fail[ed] to implement policies and procedures that mandated workers keep 6 feet apart;

t. Fail[ed] to provide workers with gloves, masks and/or PPE;

u. Fail[ed] to provide workers with clear guidelines for social distancing;

v. Fail[ed] to provide training on proper techniques for handwashing;

w. Fail[ed] to provide training on proper use of PPE;

x. Fail[ed] to provide training on proper glove use protocol;

y. Fail[ed] to ensure functional and stocked handwash stations as required by Pennsylvania and federal laws and regulations;

z. Fail[ed] to ensure proper and safe storage of soiled linens and other biohazardous waste/biohazards;

aa. Fail[ed] to ensure the facility had adequate staff and workers to ensure that all proper precautions could be taken to avoid the spread of infection;

bb. Fail[ed] to provide adequate support to staff and workers at Brighton to make sure the workers were able to comply with all requirements to stop the spread of COVID-19;

cc. Enforc[ed] and/or maintain[ed] a formal and/or informal 'work while sick' policy at the Brighton [facility];

5

dd. Fail[ed] to properly sanitize or otherwise disinfect Brighton, despite the fact that workers and residents at the facility were falling ill;

ee. Fail[ed] to ensure that the kitchen facilities were properly sanitizing pots, pans and food service items to prevent the spread of COVID-19;

ff. Fail[ed] to perform temperature checks on workers arriving at Brighton before they were allowed inside the facility;

gg. Fail[ed] to timely close the facility to outside, non-staff/worker visitors to prevent COVID-19 from entering the facility;

hh. Fail[ed] to meaningfully, systematically, and permanently address and correct the years of repeated sanitation violations before the Brighton outbreak despite warnings from the Pennsylvania Department of Health that the violations could spread infection at the facility;

ii. Fail[ed] to train workers to address and correct the years of repeated sanitation violations before the Brighton outbreak, despite warnings from the Pennsylvania Department of Health that the violations could spread infection at the facility;

jj. Fail[ed] to meaningfully, systematically, and permanently address and correct the years of repeated infection control violations the Brighton outbreak, despite warnings from the Pennsylvania Department of Health that the violations could spread infection at the facility;

kk. Fail[ed] to train workers to address and correct the years of repeated infection control violations before the Brighton outbreak, despite warnings from the Pennsylvania Department of Health that the violations could spread infections at the facility;

ll. Violat[ed] federal and state guidelines and requirements related to COVID-19 prevention in the workplace;

mm. Violat[ed] OSHA regulations, including OSHA 1910.132, related to the use of PPE;

nn. Breach[ed] their duties under various sections of the Restatement (Second) of Torts, including, but not limited to, § 340, *et seq.*; § 341, *et seq.*; and § 500, *et seq.*;

oo. Fail[ed] to provide Kevin Carroll with a safe place to work;

pp. Allow[ed] workers at the facility, including Kevin Carroll, to become infected by COVID-19 while working at Brighton;

qq. Fail[ed] to properly train and supervise management, staff and other workers about the danger posed by COVID-19 and the necessary methods to prevent infection;

rr. Fail[ed] to properly train and supervise management, staff and other workers about federal and state guidelines regarding COVID-19 and federal and state guidelines to prevent COVID-19 infection;

ss. Fail[ed] to warn Kevin Carroll and other workers at Brighton of the danger posed by COVID-19;

tt. Fail[ed] to adopt, enact, employ, and enforce proper and adequate safety programs, precautions, procedures, measures, and plans;

uu. Fail[ed] to provide workers with safety equipment;

vv. Actively [denied] workers N95 masks to protect themselves from the spread of COVID-19;

ww. Fail[ed] to provide workers with adequate safety equipment;

xx. Fail[ed] to properly supervise and inspect the work at Brighton;

yy. Fail[ed] to prevent workers at Brighton from being infected by COVID-19;

zz. Fail[ed] to provide proper training on how to combat an airborne virus;

aaa. Fail[ed] to hire and/or select appropriate individuals for managerial positions;

bbb. Fail[ed] to conduct appropriate safety surveys of the facilities before the virus to address practices that could cause contamination and spread infection;

ccc. Fail[ed] to hire appropriate consultants for how to respond to an airborne virus;

ddd. Fail[ed] to timely obtain appropriate PPE materials to protect workers.

eee. Fail[ed] to properly consider the safety of members of the public that would come into contact with those who worked at the facility; and

fff. Failure to express due care under the circumstances described herein.

Id. ¶ 115.

## 2.  Procedural History

### a.  Original and First Amended Complaints

Plaintiff originally filed a Complaint on April 7, 2022 in the Court of Common Pleas of Allegheny County, Pennsylvania against Defendants CHMS, Comprehensive Management Services –Property, LLC, CHMS Group, LLC, Halper, Lahasky, Healthcare Services Group, Inc., HCSG Labor Supply, LLC, HCSG Supply, Inc., HCSG Staff Leasing Solutions, LLC and Brian Edward Mejia ("Mejia").  ECF No. 1 ¶ 1.  She later filed an Amended Complaint on April 26, 2022, which removed Mejia as a defendant.  Id. ¶ 2; ECF No. 1-2.

In her original and First Amended Complaints, Plaintiff asserted claims under Pennsylvania law for negligence, fraudulent misrepresentation, intentional misrepresentation and wrongful death, along with a claim under the Survival Act.  ECF Nos. 1-1, 1-2.

### b.  Notice of Removal

CHMS filed a Notice of Removal in this action on May 6, 2022.  ECF No. 1.  CHMS asserts three grounds for removal under 28 U.S.C. §§ 1331 and 1442(a)(1).  First, CHMS asserts that Plaintiff's claims arising out of Carroll's alleged exposure to COVID-19 are preempted by the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. § 247d-6d(a)(1), so that significant federal issues arise under federal law.  Id. ¶¶ 17-60.  Second, CHMS also argues that removal is appropriate under the substantial federal question doctrine, as set forth in Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mf'g, 545 U.S. 308 (2005).  Id. ¶ 61.  Third, CHMS claims that removal is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  Id.

### c.   Stipulations and Second Amended Complaint

After CHMS removed this action, the parties filed multiple Stipulations to withdraw Plaintiff's originally pleaded claims for fraudulent and intentional misrepresentation and to dismiss several defendants.  ECF Nos. 17, 19 and 20.

The parties also stipulated to "substitute" Defendants HCSG Labor Supply, LLC, HCSG Supply, Inc. and HCSG Staff Leasing Solutions, Inc. with HCSG East, LLC.  ECF No. 20.  The Court noted that any proposed claims against HSCG East, LLC must be properly pleaded and served in accordance with the Federal Rules of Civil Procedure, so it construed the parties' stipulation as a Motion to Amend the Complaint and granted this motion.  ECF No. 26.  Thereafter, Plaintiff filed the operative Second Amended Complaint against Defendants CHMS, Halper, Lahasky, Healthcare Services Group, Inc. and HSCG East, LLC.  ECF No. 33.

### d.   Pending Motions

#### (1) Motion to Remand

Plaintiff filed the instant Motion to Remand and Brief in Support on October 28, 2021. ECF Nos. 12 and 14.[2]  The CHMS Defendants filed a Brief in Opposition to the Motion to Remand on November 18, 2021.  ECF No. 30.[3]

The Motion to Remand is now ripe for consideration.

---

[2] The Brief in Support of the Motion to Remand was originally filed at ECF No. 13; it was re-filed at ECF No. 14 to correct a filing error.

[3] After filing her Motion to Remand, Plaintiff also filed a Notice of Supplemental Authority, ECF No. 28, to inform the Court of the United States Court of Appeals for the Seventh Circuit's subsequent decision in <u>Martin v. Petersen Health Operations, LLC</u>, 37 F.4th 1210 (7th Cir. 2022).

**(2) Motions to Dismiss**

The CHMS Defendants filed the instant Motion to Dismiss and Brief in Support on June 15, 2022.  ECF Nos. 21 and 22.  Defendant Healthcare Services Group, Inc. also filed a Motion to Dismiss and Brief in Support on the same date.  ECF Nos. 23 and 24.

Plaintiff filed her Second Amended Complaint after the Motions to Dismiss were filed, in which she added HSCG East, LLC as a defendant.  ECF No. 33.  Given the limited nature of this amendment, the Court notified the parties that it would consider the pending Motions to Dismiss as being addressed to the allegations in Plaintiff's Second Amended Complaint if Defendants so chose.  ECF No. 34.  The CHMS Defendants and HSCG Defendants notified the Court that they wished to adopt the pending Motions to Dismiss in response to the Second Amended Complaint. ECF Nos. 35 and 37.

Plaintiff filed Responses and Briefs in Opposition to the Motions to Dismiss on July 29, 2022.  ECF Nos. 40, 41, 42 and 43.

The Court granted Defendants an extension of time to file a Reply in further support of the Motions to Dismiss until August 26, 2022.  ECF Nos. 45 and 47.  While Defendants intend to submit further briefing, the Court should not consider the merits of the Motions to Dismiss for the reasons discussed below.

**B.  LEGAL STANDARD**

Removal of an action brought in state court to federal court is permitted where the district court has original jurisdiction.  28 U.S.C. § 1441(a).  District courts have original jurisdiction over

any civil action "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

To determine whether a claim "arises under" federal law, and thus is removable from state court by a defendant, the Court applies the "well-pleaded complaint rule."  Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987); see also Allstate Ins. Co. v. The 65 Sec. Plan, 879 F.2d 90, 92-93 (3d Cir. 1989).  Under the well-pleaded complaint rule, removal is proper only if a federal question is presented on the face of plaintiff's properly pleaded complaint.  Caterpillar v. Williams, 482 U.S. 386, 392 (1987).  "The rule makes the plaintiff the master of the claim; he or she may avoid federal question jurisdiction by exclusive reliance on state law."  Id.

Because "the federal question ordinarily must appear on the face of a properly pleaded complaint[,] an anticipated or actual federal defense generally does not qualify a case for removal." Jefferson Cnty, Ala. v. Acker, 527 U.S. 423, 431 (1999).  Under 28 U.S.C. § 1442(a), the federal-officer-removal statute, however, "suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law."  Id.

Moreover, "[w]here a state law cause of action is completely preempted by a federal statute, the suit is deemed within the original jurisdiction of the district court and subject to removal." Ciferni v. Day & Zimmerman, Inc., 529 F. App'x 199, 201 (3d Cir. 2013) (citing Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 559-60 (1968)).

"Remand to state court is required 'if at any time before final judgment it appears that the district court lacks subject matter jurisdiction.'"  Hoffman v. Nutraceutical Corp., 563 F. App'x 183, 185 (3d Cir. 2014) (quoting 28 U.S.C. § 1447(c)) (alteration omitted).  The removing party bears the burden of showing that removal is appropriate.  Frederico v. Home Depot, 507 F.3d 188,

193 (3d Cir. 2007). "[T]he [general] removal statute should be strictly construed and all doubts should be resolved in favor of remand." <u>Abels v. State Farm Fire & Cas. Co.</u>, 770 F.2d 26, 29 (3d Cir. 1985). By contrast, "the presumption under the federal officer removal statute favors removal" and "is to be 'broadly' construed in order to liberally grant federal officers access to a federal forum." <u>In re Asbestos Prods. Liab. Litig.</u>, 770 F. Supp. 2d 736, 741 (E.D. Pa. 2011) (citations omitted).

### C. THE PREP ACT

As discussed, the CHMS Defendants contend that the PREP Act confers federal jurisdiction. By way of background, "the PREP Act protects certain covered individuals—such as pharmacies and drug manufacturers—from lawsuits during a public-health emergency." <u>Maglioli v. Alliance HC Holdings LLC</u>, 16 F.4th 393, 400 (3d Cir. 2021) (citing 42 U.S.C. §§ 247d-6d, 247d-6e). If the Secretary of the Department of Health and Human Services ("HHS") (the "Secretary") deems a particular health threat to be a public-health emergency, he may publish a declaration in the Federal Register recommending certain "covered countermeasures." <u>Id.</u> (citing 42 U.S.C. § 247d-6d(b)(1)). When that occurs, "the covered individuals become immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . . ." <u>Id.</u>; 42 U.S.C. § 247d-6d(a)(1).

There is, however, one exception to this statutory immunity. <u>Maglioli</u>, 16 F.4th at 401. The PREP Act provides "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct." <u>Id.</u> (citing 42 U.S.C. § 247d-6(d)(1)). For injuries not involving willful misconduct, the PREP Act establishes a "Covered Countermeasure Process Fund," which provides "compensation to eligible individuals for covered

injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration."  Jackson v. Big Blue Healthcare, Inc. No. 2:20-cv-2259, 2020 WL 4815099, at *5 (D. Kan. Aug. 19, 2020) (quoting 42 U.S.C. § 247d-6e(a)).

In March 2020, the Secretary issued a declaration under the PREP Act, designating COVID-19 as a public-health emergency.  Maglioli, 16 F.4th at 401 (citing 85 Fed. Reg. 15, 198, 15, 201 (Mar. 17, 2020)).  The Secretary recommended certain covered countermeasures that include drugs, devices and products "used to treat, diagnose, cure, prevent or mitigate COVID-19," subject to the PREP Act's definitions.  Id.  Since then, the Secretary has issued ten amendments to the declaration, including the addition of respiratory protective devices to the list of covered countermeasures.  Id.; see also 85 Fed. Reg. 21012-02 (Apr. 15, 2020); 87 Fed. Reg. 982-01 (Jan 7, 2022).  HHS has also released various advisory opinions and guidance letters on issues related to the declaration.  Maglioli, 16 F. 4th at 401.

### D.  DISCUSSION

#### 1.  Motion to Remand

The CHMS Defendants assert that removal is proper for three reasons: (1) because the PREP Act completely preempts Plaintiff's claims; (2) the Complaint necessarily raises a substantial, disputed federal question under the Grable doctrine; and (3) under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1).  For the reasons below, the Court should find that none of these three grounds establish federal jurisdiction in this case, and it should therefore grant the Motion to Remand.

#### a.  The PREP Act

The CHMS Defendants assert that federal jurisdiction exists because the PREP Act completely preempts Plaintiff's claims.  Relevant here, there is a distinction between "complete"

and "ordinary" preemption, which has "serious implications for the availability of removal." 14C Fed. Prac. & Proc. Juris. (Wright & Miller) § 3722.2 (Rev. 4th ed. 2022). As the United States Court of Appeals for the Third Circuit has explained, "[f]ederal preemption is a defense to state-law claims." Maglioli, 16 F.4th at 407. Federal preemption ordinarily does not provide a basis for removal, because it does not appear on the face of the well-pleaded complaint. Id.

Complete preemption is different. Under the complete-preemption doctrine, "a federal question *does* appear on the face of the complaint when Congress 'so completely pre-empt[s] a particular area that any civil complaint raising [the] select group of claims is necessarily federal in character.'" Id. (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987)). "In other words, a federal statute's preemptive force can be so great that we treat a displaced state-law claim as if it were a federal claim." Id. Thus, while "a garden-variety preemption defense would not satisfy the well-pleaded complaint rule, a completely preempted state-law claim does." Id.

Based on this, "[r]emoval is proper only if the federal statute 'wholly displaces the state-law cause of action through complete preemption.'" Id. (quoting Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003)). "A statute is completely preemptive if it 'provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action.'" Id. (quoting Beneficial Nat'l Bank, 539 U.S. at 9). Complete preemption is "rare." Id. (noting that the United States Supreme Court only has recognized three completely preemptive statutes).

The Third Circuit recently considered whether the PREP Act is a complete preemption statute in Maglioli. In that case, plaintiffs brought state-law negligence claims and sought punitive damages arising out of allegations that the nursing home-defendants' mishandling of the COVID-19 pandemic caused residents' deaths. Id. at 400. Just as here, the court considered whether

defendants properly removed the action to federal court based on preemption under the PREP Act, the <u>Grable</u> doctrine, and the federal-officer removal statute, and it found that removal was improper on all grounds.

Applying the principles discussed above, the Third Circuit found that the PREP Act only completely preempts claims for willful misconduct under the statute.  Because plaintiffs in <u>Maglioli</u> solely pleaded claims for negligence under state law, the Third Circuit found that removal was improper on this basis.  As the Third Circuit explained:

> As applied to this case, we ask whether the PREP Act "provide[s] the exclusive cause of action" for negligence claims against the nursing homes.  <u>Id.</u> at 9, 123 S.Ct. 2058.  We can break this question into two parts: (1) Does the PREP Act create an exclusive federal cause of action? If it does, (2) do any of the estates' claims fall within the scope of that cause of action? If they do, the estates' claims are completely preempted and removable to federal court.  Here, the PREP Act creates an exclusive cause of action for willful misconduct. But the estates allege only negligence, not willful misconduct.  The estates' negligence claims thus do not fall within scope of the exclusive federal cause of action.  They are not completely preempted, so they belong in state court.

<u>Id.</u> at 404 (footnote omitted).

In so holding, the Third Circuit acknowledged the Secretary's statement in an amendment to the Declaration that "[t]he plain language of the PREP Act makes clear that there is complete preemption of state law."  <u>Id.</u> at 403 (quoting Fifth Amendment to Declaration under the Public Readiness and Emergency Preparedness Act, 86 Fed. Reg. 7, 872, 7, 874 (Feb. 2., 2021)).   But the court found that it was not required to defer to this interpretation "for the simple reason that HHS is not delegated authority under the PREP Act to interpret the scope of federal courts' jurisdiction," and it also found this statement to be unpersuasive based on the lack of any supporting legal analysis.  <u>Id.</u> at 403-04.

Against this backdrop, the Court turns to the parties' arguments on this issue.  In support of the Motion to Remand, Plaintiff argues that she does not plead a claim for willful misconduct

under the PREP Act, so there is no basis for federal jurisdiction under the complete-preemption doctrine.  ECF No. 14 at 10-12.  In any event, she argues, the PREP Act does not apply to claims where, as here, Defendants have allegedly *failed* to take preventative measures.  Instead, she argues, numerous federal courts have held that this statute only applies to claims arising out of the affirmative use or administration of covered countermeasures.  Id. at 7-10.

In response, the CHMS Defendants argue that Plaintiff's claims are completely preempted because: (1) the PREP Act is a "complete preemption statute" based on the statutory text and HHS interpretations; and (2) Plaintiff alleges willful misconduct, such that her claims could have been brought under the exclusive federal cause of action in the PREP Act.  ECF No. 30 at 6-16; see also ECF No. 1 at 7-27.  The CHMS Defendants also argue that the PREP Act does apply because Plaintiff alleges that Brighton negligently allocated and administered covered countermeasures, such as PPE, and the Secretary and HHS have declared or advised that the PREP Act can apply to the non-use of covered countermeasures.  ECF No. 30 at 16-20.

Upon review, the Court should find that the PREP Act does not confer federal jurisdiction under the doctrine of complete preemption.  Although the CHMS Defendants argue that the PREP Act is a complete preemption statute, the Third Circuit expressly rejected this view in Maglioli, except for claims of willful misconduct.  Other federal circuit courts have agreed.  See, e.g., Martin v. Petersen Health Operations, LLC, 37 F.4th 1210, 1213 (7th Cir. 2022) ("Section 247d–6d(a)(1) is an ordinary rule of preemption, a defense to liability under state law. It does not create a new federal claim."); Saldana v. Glenhaven Healthcare LLC, 27 F.4th 679, 688 (9th Cir. 2022) ("The PREP Act neither shows the intent of Congress to displace the non-willful misconduct claims brought by the [plaintiffs] related to the public health emergency, nor does it provide substitute causes of action for their claims.  Thus . . . the PREP Act is not a complete preemption statute.").

While claims for willful misconduct under the statute are completely preempted, there are no such claims in this case.  Under the PREP act, a claim for willful misconduct has several elements.  Plaintiff must show: (1) "an act or omission," that is taken (2) "intentionally to achieve a wrongful purpose," (3) "knowingly without legal or factual justification," and (4) "in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit."  42 U.S.C. § 247d-6d(c)(1)(A).  Moreover, the action must be (5) "against a covered person," (6) "for death or serious physical injury" that is (7) "proximately caused by [the covered person's] willful misconduct."  Id. § 247d-6d(d)(1).  The statute also provides that the willful-misconduct requirement "shall be construed as establishing a standard for liability that is more stringent than a standard of negligence in any form or recklessness."  Id. § 247d-6d(c)(1)(B).

In this case, Plaintiff only brings claims for negligence.  As the Third Circuit noted in Maglioli, "[w]illful misconduct is a separate cause of action from negligence," and "complete preemption does not apply when federal law creates an entirely *different* cause of action from the state claims in the complaint."  Maglioli, 16 F.4th at 411.

Nor could Plaintiff have brought a willful misconduct claim under the PREP Act based on her allegations.  Here, as in Maglioli, Plaintiff does not allege that Defendants acted intentionally to achieve a wrongful purpose—let alone that they did so with respect to any covered countermeasures under the PREP Act.  Because Plaintiff does not plead a willful misconduct cause of action under the PREP Act, her claims are not completely preempted.  Therefore, the Court should find that the PREP Act does not confer federal jurisdiction on this basis.

### b.  **Grable** Doctrine

The CHMS Defendants also assert that federal jurisdiction is proper under the Grable doctrine.  In support of the Motion to Remand, Plaintiff argues that the Third Circuit held that the

Grable doctrine did not apply under similar facts in Maglioli, and the Fifth Circuit, along with many other federal courts, have concurred.  ECF No. 14 at 18-19 (citing Mitchell v. Advanced HCS, LLC, 28 F.4th 580, 589 (5th Cir. 2022); Dupervil v. Alliance Health Operations, LLC, 516 F. Supp. 3d 238, 259 (E.D.N.Y. 2021); Anson v. HCP Prairie Village KS OPCO LLC, 523 F. Supp. 3d 1288 (D. Kan. 2021); Smith v. The Bristol at Tampa Rehab. & Nursing Ctr., LLC, No. 8:20-cv-2798, 2021 WL 100376, at *2 (M.D. Fla. Jan. 12, 2021); Saldana v. Glenhaven Healthcare LLC, No. CV 20-5631, 2020 WL 6713995, at *2 n.3 (C.D. Cal. Oct. 14, 2020); Martin v. Serrano Post Acute LLC, No. CV 20-5937, 2020 WL 5422949, at *2-3 (C.D. Cal. Sept. 10, 2020)).

In response, the CHMS Defendants acknowledge the Third Circuit's decision in Maglioli. ECF No. 30 at 26.  However, they argue, this case is distinguishable because the Third Circuit found that "a PREP Act preemption defense is not 'necessarily raised' by a well-pleaded state-law negligence complaint."  Id. (citing Maglioli, 16 F.4th at 413).  Here, by contrast, the CHMS Defendants argue that Plaintiff's Complaint is "replete with specific allegations of willful and wanton misconduct," which implicate the PREP Act's exclusive federal cause of action for willful misconduct.  Id.  The CHMS Defendants also argue that there is a serious federal interest in having Plaintiff's claims heard in a federal forum.  Id.

Under the Grable doctrine, federal jurisdiction lies over a state claim if a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  Gunn v. Minton, 568 U.S. 251, 258 (2013).

In Maglioli, the Third Circuit held that the Grable doctrine did not apply based on defendants' PREP Act immunity defense, explaining as follows:

> The nursing homes argue that PREP Act immunity is a significant federal issue that passes the Grable test.  But a PREP Act preemption defense is not "necessarily

raised" by a well-pleaded state-law negligence complaint, so their argument fails at <u>Grable</u>'s first step.

"Federal preemption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." <u>Metro Life Ins. Co.</u>, 481 U.S. at 63, 107 S. Ct. 1542. Here, the nursing homes "would at best be entitled to a preemption defense" under the PREP Act. <u>Manning v. Merrill Lynch Pierce Fenner & Smyth, Inc.</u>, 772 F.3d 158, 165 (3d Cir. 2014), <i>aff'd</i>, 578 U.S. 374, 136 S. Ct. 1562, 194 L.Ed.2d 671 (2016). The estates would properly plead their state-law negligence claims without mentioning the PREP Act, so the PREP Act is not "an essential element of the plaintiff[s'] state law claim." <u>Id.</u> at 163. We therefore lack federal question jurisdiction under <u>Grable</u>.

<u>Maglioli</u>, 16 F.4th at 413.

Here, too, Plaintiff pleads her state-law negligence claims under Pennsylvania law without referring to the PREP Act, and it is not an essential element of her claims. Because federal jurisdiction does not exist under the <u>Grable</u> doctrine, the Court should also grant the Motion to Remand on this basis.

### c. Federal Officer Removal

CHMS also removed this action under the federal officer removal statute. The federal officer removal statute, 28 U.S.C. § 1442(a)(1), permits certain officers of the United States to remove actions to federal court. "To remove a case under § 1442(a)(1), a defendant must meet four requirements: (1) the defendant must be a 'person' within the meaning of the statute; (2) the plaintiff's claims must be based upon the defendant 'acting under' the United States, its agencies, or its officers: (3) the plaintiff's claims against the defendants must be 'for or relating to' an act under color of federal office; and (4) the defendant must raise a colorable federal defense to the

plaintiff's claims." <u>Maglioli</u>, 16 F.4th at 404 (citing 28 U.S.C. §1442(a)(1); <u>Papp v. Fore-Kast Sales Co.</u>, 842 F.3d 805, 810 (3d Cir. 2016)).

There is no dispute that CHMS satisfies the first element.  A company, like CHMS, is considered a "person" under § 1442(a)(1).  <u>See</u> <u>Papp</u>, 842 F.3d at 812.

The second element, however, is in dispute.   In support of the Motion to Remand, Plaintiff contends that CHMS is a private party, and it was not "acting under" the color of federal office during the relevant time.  ECF No. 14 at 19-22.  As Plaintiff points out, the Third Circuit similarly considered, and rejected, the notion that a nursing home operating during the COVID-19 pandemic was a federal officer for purposes of § 1442(a)(1) in <u>Maglioli</u>.  <u>Id.</u> at 19.  Plaintiff argues that mere compliance with governmental regulations and directives is not sufficient for § 1442(a)(1) removal.  <u>Id.</u> at 21-22.

In response, the CHMS Defendants argue that Brighton was subject to significant federal regulation during the COVID-19 pandemic, so much so that it "became an extension of the Federal government and its agencies and officers, carrying out their instructions with little or no discretion of its own."  ECF No. 30 at 28-31.   Unlike the nursing homes at issue in <u>Maglioli</u>, they argue, Brighton's response to the COVID-19 pandemic was "expressly directed" by the National Guard and the Pennsylvania Department of Health.  <u>Id.</u> at 3.

Upon review, the Court should find the CHMS Defendants do not satisfy the second element for removal under §1442(a)(1).  As the Third Circuit explained in <u>Maglioli</u>:

> The nursing homes are private parties, not federal actors.  They may nevertheless invoke federal-officer removal if they were "acting under" federal officers.  <u>See</u> <u>Watson v. Philip Morris Cos.</u>, 551 U.S. 142, 147 (2007).  The phrase 'acting under' is broad, and we construe it liberally.  <u>Id.</u>  But the phrase is not boundless.  Merely complying with federal laws and regulations is not "acting under" a federal officer for purposes of federal-officer removal.  <u>Id.</u> at 153.  Even a firm subject to detailed regulations and whose "activities are highly supervised and monitored" is not "acting under" a federal officer.  <u>Id.</u>  The nursing homes must demonstrate

something beyond regulation or compliance. They must show their actions "involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." Id. at 152.

Maglioli, 16 F.4th at 404-05 (parallel citations omitted).

As the Third Circuit found, "even assuming the nursing homes are subject to intense regulation, that alone does not mean that they were 'acting under' federal officers. Id. at 405. Thus, removal was improper under the federal-officer removal statute. Id.; see also Martin, 37 F.4th at 1212-13; Saldana, 27 F.4th at 686; Boyle v. Meyer, No. 2:21-cv-00694, 2021 WL 6051439, at *3-4 (W.D. Pa. Dec. 20, 2021).

 Here, too, the CHMS Defendants were private parties who were not "acting under" federal officers simply because they were subject to federal laws and regulations. While the CHMS Defendants argue that, unlike Maglioli, Defendants acted under the direction and orders of the Pennsylvania Department of Health and National Guard, this does not change the outcome. The Pennsylvania Department of Health is not a federal agency, and the National Guard did not allegedly arrive at Brighton until after Carroll contracted COVID-19. Therefore, the "acting under" requirement is not satisfied.

Because Defendants fail to satisfy element two, it is not necessary to consider elements three and four of the test for federal officer removal. CHMS was not "acting under" a federal officer, so removal under 28 U.S.C. § 1442(a)(1) was improper.

Based on the above, the Court does not have subject-matter jurisdiction over Plaintiff's claims. The Motion to Remand should therefore be granted.

### 2. Motions to Dismiss

Defendants have also filed pending Motions to Dismiss. ECF Nos. 21 and 23. Because the Court lacks jurisdiction over Plaintiff's claims for the reasons discussed, the issue raised in the

instant Motions to Dismiss should be decided upon remand by the state court.  For that reason, the Court should not consider the pending Motions to Dismiss.

### E.  CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion to Remand, ECF No. 12.  The Court should not consider the pending Motions to Dismiss, ECF Nos. 21 and 23.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to timely file objections will waive the right to appeal.  Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Dated: August 16, 2022                              Respectfully submitted,


                                                    _ /s/ Maureen P. Kelly_____
                                                    MAUREEN P. KELLY
                                                    UNITED STATES MAGISTRATE JUDGE


cc:    Honorable David S. Cercone
       United States District Judge


       All counsel of record via CM/ECF.